# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17-03007-01-CR-S-RK |
| | ) | |
| RANDY G. DABNEY, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE</u>

Before the Court is the Motion to Suppress (Doc. 79) filed by Defendant Randy G. Dabney.  Pursuant to 28 U.S.C. § 636(b) and Local Rule 72.1, this action was referred to the undersigned for the purpose of submitting a report on all pretrial motions to suppress evidence. For the following reasons, it is **RECOMMENDED** that the Motion to Suppress be **DENIED**.

At issue is Count 2 of the Indictment (doc. 1), charging Defendant with possession of methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Defendant moves to suppress "any and all physical evidence seized incident to a non-consensual search of [his] motor vehicle on or about November 24, 2015, in the city of Springfield, Greene County, Missouri, as charged in Count 2 of the Indictment; and any and all other or further evidence derived therefrom."  (Doc. 79 at 1.)  He argues that the search of his motor vehicle was performed without his consent and without probable cause to do so.  Additionally, Defendant asserts he was "outside the vehicle and not within physical reach of the inside of the passenger compartment."  (*Id*. at 2.)  In his Reply (doc. 105), Defendant refines his argument to two issues regarding the sufficiency of the evidence.  First, he questions whether there was reasonable suspicion to search the interior of the vehicle.  Second, he posits that the search exceeded its

permissible scope.  Although a Superseding Indictment (doc. 128) was filed subsequent to the motion, Count 2 remains unchanged.  On September 20, 2017, the Court held a hearing on the motion.  At the hearing, the Court heard testimony from Officer Zach Pugh ("Officer Pugh") of the Springfield, Missouri Police Department ("SPD").

## I.    Findings of Fact[1]

On November 24, 2015, at approximately 1:25 a.m., Officer Pugh was patrolling alone in a marked vehicle, traveling east on College Street toward the Kansas Expressway, in Springfield, Missouri.  At that time he observed a two-toned Chevy truck traveling west on College.  Officer Pugh turned around to follow the truck.  The truck immediately pulled into the parking lot of a closed motorcycle shop.  Officer Pugh decided not to investigate further and continued northwest on College, then turned northeast onto the Chestnut Expressway.  One to two minutes after Officer Pugh first encountered the two-toned Chevy truck, the same truck turned onto Chestnut in front of him, also traveling east.  Officer Pugh now believed the truck had pulled into the parking lot earlier in an effort to avoid him, so he followed the truck to a stop light at Chestnut and the Kansas Expressway.  There, he saw that the brake light was out on the driver's side of the truck.  Officer Pugh followed the truck through the intersection, and at Chestnut and Grant Avenue he turned on his emergency lights to initiate a traffic stop.  However, the truck did not immediately pull over when Officer Pugh activated his emergency lights.  Instead, the truck slowed down to about five miles per hour and began weaving back and forth within its lane.  The truck bypassed several places where it could have stopped, turning right onto Grant, then right onto Tampa Street, before eventually pulling over at approximately 1:40 a.m.  These actions made Officer Pugh think the driver was trying to conceal contraband or a weapon, or preparing

---

[1] The facts set forth are taken from the testimony adduced and the exhibits admitted at the hearing on the motion. See Transcript (Doc. 138) and Exhibit Indexes (Docs. 132, 133).

to flee.  The areas where Officer Pugh first observed the truck and where the truck stopped are both considered high-crime areas by the SPD.

Officer Pugh approached the truck and obtained identification from the driver, Randy G. Dabney, Defendant in this action.  Officer Pugh returned to his vehicle to conduct a routine warrant check of Defendant.  While conducting the check, Officer Pugh learned that Defendant had a "Caution 2 Indicator," meaning he was known to be armed.  Officer Pugh also determined that Defendant had been arrested for a drug violation approximately six weeks earlier, and that his driver license was suspended.

Officer Pugh returned to the truck and had Defendant exit the truck.  Officer Pugh asked Defendant for consent to search him, to which Defendant agreed.  Officer Pugh searched Defendant and found nothing.  Officer Pugh then asked Defendant for consent to search the truck, to which Defendant refused.  Based on the time of night, the high-crime area, Defendant's evasive and suspicious driving actions, his recent drug arrest, and the "Caution 2 Indicator" listing him as known to be armed, Officer Pugh advised Defendant that he was going to frisk the truck for weapons.  Officer Pugh entered the truck and began the frisk, during which he observed a hole, large enough to conceal a firearm, where a speaker would normally be in the driver's side door.  Using a flashlight, he looked into the hole and saw a large bag containing a white crystalline substance, which he believed to be methamphetamine based on his training and experience.  Officer Pugh pulled the bag out of the hole and saw there were several individually-packaged baggies inside the larger bag.  He then exited the truck, handcuffed Defendant, advised him he was under arrest, and read him his *Miranda* rights.  Defendant then told Officer Pugh that the substances in the bag were heroin, methamphetamine and cocaine.  Officer Pugh also found marijuana and several different pills in the bag.

## II. Conclusions of Law

The Fourth Amendment protects citizens from unreasonable searches and seizures by the government. *See* U.S. Const. amend. VI; *United States v. Va Lerie*, 424 F.3d 694, 701 (8th Cir. 2005). Generally, evidence found as a result of an unlawful search or seizure, and the fruits therefrom, cannot be used against a defendant and must be suppressed. *United States v. Riesselman*, 646 F.3d 1072, 1078-79 (8th Cir. 2011). However, searches conducted pursuant to established and well-delineated exceptions do not require a warrant and are thus not unreasonable. *Arizona v. Gant*, 556 U.S. 332, 338 (2009).

### A. Reasonable suspicion for a *Terry* search of the truck

Defendant challenges the Government's proof as to "whether reasonable suspicion existed to 'frisk' the interior of the vehicle, within the meaning of *Michigan v. Long*." (Doc. 105 at 3.) Although not specifically contested by Defendant, as a preliminary matter, the Court will address the validity of the stop of Defendant. According to Officer Pugh's testimony, he initiated the stop because he observed a brake light on the truck was not working, which is a traffic violation. "It is well established that a traffic violation – however minor – creates probable cause to stop the driver of a vehicle." *United States v. Perez*, 200 F.3d 576, 579 (8th Cir. 2000). Therefore, the Court concludes there was a legitimate basis for the stop.

In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court held that a limited protective search for weapons, commonly referred to as a *Terry* search, is constitutional "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous." *Id.* at 30. The Supreme Court later recognized "investigative detentions involving suspects in vehicles are especially fraught with dangers to

4

police officers" and extended the principle of the *Terry* search to the passenger compartment of a vehicle, "limited to those areas in which a weapon may be placed or hidden." *Michigan v. Long*, 463 U.S. 1032, 1047-49 (1983). A police officer may also conduct a protective search for weapons pursuant to *Terry* during a stop for a traffic violation. *United States v. Robinson*, 664 F.3d 701, 704 (8th Cir. 2011).

To conduct a *Terry* search, the officer must have "a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer[] in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. *Long*, 463 U.S. at 1049. (*quoting Terry*, 392 U.S. at 21). In addition, "[i]f, while conducting a legitimate *Terry* search of the interior of the automobile, the officer should [] discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." *Id*. at 1050.

In this matter, after the truck stopped, Officer Pugh approached and obtained Defendant's identification. Officer Pugh then returned to his vehicle to do a warrant check, through which he discovered Defendant was listed as a "Caution 2 Indicator," meaning he was known to be armed. Officer Pugh also learned Defendant had been arrested for a drug violation approximately six weeks earlier, and his driver license was suspended. Officer Pugh reengaged Defendant and had him exit the truck. Defendant then agreed to a search of his person, which found nothing. At this point, Defendant was not under arrest.

However, Officer Pugh remained aware that Defendant was known to be armed, had been arrested for drugs recently, and had a suspended license. Officer Pugh also stated that he believed Defendant had attempted to avoid contact with him earlier, and that he observed

5

Defendant driving suspiciously in what seemed to be an effort to hide contraband or weapons. Additionally, the stop took place late at night in a high-crime area. *See United States v. Preston*, 685 F.3d 685, 690 (8th Cir. 2012) (holding a protective frisk was appropriate during a nighttime stop of a vehicle where a passenger appeared to attempt to create a diversion, the driver had no license, and the vehicle was registered to a car lot).

In light of all of these circumstances, it was reasonable to suspect that Defendant was dangerous and could gain access to weapons. Furthermore, once a ticket was issued for the traffic violation, Defendant would have been allowed to return to his vehicle. *See United States v. Goodwin-Bey*, 584 F.3d 1117, 1121 (8th Cir. 2009) ("All of the occupants were outside the vehicle at the time of the search, but absent an arrest, they would have been free to reenter the vehicle and pose a danger to the officers.") (internal citations and quotations omitted). Consequently, the Court concludes that the protective search of Defendant's vehicle for weapons was justified under the dangerousness exception set forth in *Michigan v. Long*.

### B.    Scope of the *Terry* search of the truck

Defendant also challenges whether "the manner in which the officer conducted the 'frisk' once inside the passenger compartment remained within its permissible scope under the principles of [*Michigan v. Long*] and its progeny." (Doc. 105 at 3.) Generally, protective searches must be "quick and limited [and] narrowly confined to a cursory visual inspection[.]" *Maryland v. Buie*, 494 U.S. 325, 327 (1990). A protective search of the passenger compartment of a vehicle for weapons must be "limited to those areas in which a weapon may be placed or hidden." *Long*, 463 U.S. at 1049. Those areas include "any open or closed container found within the passenger compartment." *Id.* And, "[i]f, while conducting a legitimate *Terry* search of the interior of the automobile, the officer should [] discover contraband other than weapons,

6

he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." *Id*. at 1050. Additionally, the plain view doctrine provides that evidence may be seized without a warrant "if the officers are lawfully in a position from which they view the object, the incriminating character of the object is immediately apparent, and the officers have a lawful right of access to the object." *United States v. Evans*, 830 F.3d 761, 766 (8th Cir. 2016).

Here, while searching the truck for weapons, Officer Pugh observed the empty speaker hole in the driver's door, which is akin to an open container and clearly an area in which a weapon could be placed or hidden. He shined his flashlight into the speaker hole, where he saw a large bag full of smaller bags containing a white crystalline substance. *See United States v Evans*, 830 F.3d 761, 767 (8th Cir. 2016) (shining a flashlight to illuminate a darkened area during a legitimate search is not constitutionally prohibited) (*quoting Texas v. Brown*, 460 U.S. 730, 739-40 (1983)). Officer Pugh testified that he believed the bag contained methamphetamine.

As discussed previously, Officer Pugh was inside the truck to conduct a valid Terry search, and thus was lawfully in a position to view the bag. Also, Officer Pugh testified that he believed the white crystalline substance to be methamphetamine. Based on his training and experience, the location and packaging of the substance, and Defendant's drug arrest history, the incriminating character of the object was immediately apparent to Officer Pugh. *See United States v. Raines*, 243 F.3d 419, 422 (8th Cir. 2001) (immediately apparent means the police have "probable cause to associate the item with criminal activity"). Lastly, Officer Pugh found the bag in a speaker hole in the driver's door, which is an area within the passenger compartment where a weapon could be hidden, similar to an open container. Therefore, he had a lawful right

of access to the bag, discovered during a legitimate *Terry* search.  As a result, Officer Pugh

conducted the *Terry* search within the permissible scope of *Michigan v. Long,* and discovered the

illegal drugs under the plain view doctrine, resulting in no constitutional violation.

## III.     Recommendation

Based on the foregoing, it is **RECOMMENDED** that Defendant's Motion to Suppress

(Doc. 79) be **DENIED**.

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: January 3, 2018